Our next case is Abayomi v. Collins, Appeal No. 24-2943. Mr. Ryan, whenever you're ready. May peace be upon you, counsel. Good morning. My name is Paul Ryan and I represent the appellant Hakeem Abayomi in this matter. Mr. Abayomi was a clinical pharmacist at Heinz VA. He was terminated in April of 2016 and in this case he claims that he was terminated because of his race and because he complained about discrimination involving his supervisor. The district court granted summary judgment in this matter on September 30, 2024. We believe the district court erred and we ask that the decision be reversed, in this case be remanded for trial. As explained in our briefs, there are significant questions of disputed material fact that justify a trial here and could lead a reasonable jury to determine that Mr. Abayomi was fired because he's black and because he complained about his supervisor. Mr. Abayomi was the only black pharmacist at Heinz VA in recent memory. None of his supervisors could recall any other black clinical pharmacists working there. He was also the only clinical pharmacist that was terminated, at least as far as the chief of pharmacy, Don Links, could recall and he had been there for several years. That's suspicious in and of itself. What's your best argument of pretext? The best argument is... He clearly had employment issues. He had employment issues, but numerous other pharmacists had employment issues too. As laid out in our briefs and in our local rule 56.1 statement, errors at Heinz involving medication were widespread. They happened frequently and a lot of these errors involved pharmacists who were in the same chain of command as Mr. Abayomi and the supervisors looked the other way. What's the best argument that you have that the reasons that the VA gave for the termination were a lie? Because Mr. Abayomi's... Well, the reasons given were Mr. Abayomi's work performance. As the district court found, Mr. Abayomi established on summary judgment that his work performance met expectations. Mr. Abayomi disputed all these errors, for the most part, and here there were many other employees who made similar errors and they just weren't fired. And those employees are non-black. Mr. Abayomi is black and in addition to the fact that... So it sounds to me like what you're saying is that we should extrapolate from the initial burden to pretext. Because the arguments that you've made seem to me to say that Mr. Abayomi established a prima facie case of discrimination. And from that we should extrapolate pretext. In other words, because he was the only black pharmacist and because other pharmacists who made mistakes were not fired, that that not only establishes the second and fourth element of the McDonnell-Douglas test, but also establishes pretext in this case. Or is there more? Well, as I mentioned in our briefs, this is the kind of case where the elements of performance and pretext overlap. Because they're claiming he was fired for bad work performance. He disputes that. In fact, the district court found that he had established that his work performance met expectations. That right there presents sufficient evidence for a jury to find that the claim that these mistakes or alleged mistakes justified termination is not an honest claim. But there's more to it than that. There's also the fact that Mr. Abayomi made this complaint of discrimination against his supervisor. And his supervisor, his demeanor changed immediately. And within a month of his other supervisors being notified that he had made the EEO complaint, they started reaching out to Labor Relations to discuss the quote-unquote case for terminating Mr. Abayomi. That kind of suspicious timing is highly suggestive of retaliation. And when they reached out to Labor Relations, Labor Relations was somewhat skeptical, asking, do you have any evidence? And then suspiciously, within a day, Elizabeth Stone, the second-level supervisor, conveniently discovered that there was another alleged medical error, which is very suggestive of pretext. It shows that they had made this decision to terminate Mr. Abayomi before they had the evidence to do it. Let me ask you about Mr. Elliott. Are you or are you not making a cat's paw argument, or are you saying that it's relevant, Elliott's bias and his input into the decision-making is relevant in this total picture and it's not a cat's paw argument? Which is it? I would say that it is a cat's paw argument. He had an influence on the decision to terminate Mr. Abayomi. Don Links, the chief of pharmacy, acknowledged that Mr. Abayomi, or Mr. Elliott, was one of the people who made the recommendation to terminate Mr. Abayomi, and therefore he did rely on Elliott's input here. Do you necessarily need that? If we're looking at this, you know, holistically, as Ortiz would have us, do you need to say that you're making a cat's paw argument with Elliott, or just that Elliott is one part of this big picture of what makes what happened here suspicious from your perspective? I think regardless of how you describe it, whether you label it as a cat's paw argument or not, it's part of the totality of the circumstances that is indicative that race was a motivation in the decision to terminate Mr. Abayomi. You have the comments from Mr. Elliott, calling him a boy, speaking in Ebonics, and all of that tends to suggest a discriminatory motivation for Mr. Abayomi's termination. Mr. Ryan, from your perspective, I gather that at least some of Mr. Abayomi's mistakes are undisputed. There was an error that Mr. Abayomi admitted to. He dispensed an insulin pen instead of a vial. Is that the only one? I believe that's the only error that he concedes, and there's evidence that that was a trivial and common error that was made by many pharmacists. What about the five-fold heparin discrepancy? Well, Mr. Abayomi, he does acknowledge that there was, that he distributed the wrong, that he verified the wrong concentration. Okay. So why doesn't that count as an undisputed mistake? You're right, Your Honor. I misspoke. Okay. He did concede that he made that mistake, but there are other employees who made the same mistake. I've got to say, you know, we see tort claims against the Vet Department of Veterans Affairs based on medical and I assume drug mistakes as well, and this is pretty sobering. If you're telling us that the mistakes are so rampant that we should infer race discrimination from the termination here. These are the facts. You can look at paragraphs 29 through 59 of our local Rule 56 statement. Errors are widespread, and other people have not been let go. Mr. Abayomi is the only person, the only clinical pharmacist that anybody can recall being fired from the VA. He's also the only black clinical pharmacist. Unless the Court has further questions, I'll reserve the remainder of my time. Okay. Thank you. Okay, Ms. Turman. May I please report, Counsel? Mr. Abayomi was terminated because he was suspected of making dangerous medication errors. He confirmed that he made dangerous medication errors, and then he offered a very concerning explanation for why he made the medication errors. In a Weingarten investigation at which Mr. Abayomi had union representation present, he was confronted with the suspicion that he had made these errors, and he was told, this is at Exhibit 30 of the Defendant Summary Judgment Materials, he stated as follows, I was told to watch my numbers. This was the reason for the mistake. I was told to watch my numbers. Prior to February 12th, I never had issues. I verified the wrong stuff on April 8th. I walk on pins and needles. I was rushing to verify my orders that related to the heparin overdosage. When confronted with another error, he said again, hindsight is 20-20. I should have changed the vial. I did a new dose for a vial, but I totally forgot to change since I was concerned about numbers. This was for sure rushing. Is it true that that investigation was initially scheduled for April 19th, the day before the EEO mediation on April 20th? The blue brief tells us this, and I don't have a confirmation from you all. I'm not sure about the scheduling of the mediation, Your Honor. What I do know is that Abayomi filed his EEO against his former first-line supervisor, Mr. Elliott, on March 7th, and then the Weingarten investigation was scheduled for April 19th, which responded to a cluster of medication errors that was earlier in the month of April. And I'm asking, was that the day before the scheduled EEO mediation on April 20th? That may have been, Your Honor. I'm not sure when the date was of the scheduled mediation. What we do know that the surrounding context about the timing here, and we see Mr. Abayomi referencing that he was rushing because of his numbers, is there were mounting concerns about his productivity that preceded the medication errors. The Heinz VA is an A1 facility, which means it's one of the largest VA medical centers in the country. It has almost a million patient encounters every year. So in addition to wanting pharmacists to exercise care in their duties, there's a volume that, as a group, that they need to meet. Mr. Abayomi was not carrying his weight six months into his probationary period when he should have been catching up to productive requirements. There were concerns about that. And in an effort to rush and meet his production numbers, we see this cluster of errors, which he admits to. And with respect to the claim that other pharmacists made errors, there's no competent evidence of that in the record. The evidence that Mr. Abayomi continually cites in support of his comparator arguments are his own declaration about his coworkers. When he was on his way out after he received notice of termination, he sent an email slinging mud at his coworkers. Why weren't they terminated? And then he filed a similar declaration before the district court. It's got to take more than that to create a factual dispute of similar misconduct. If him and were a proper comparator, just stick with me for a minute, why would the evidence of different treatment, in addition to the timing here, not be enough for a jury to consider retaliation? And I'm sorry, to make sure I heard you, you're referring to Patrick Hammond as a comparator? Thank you. Patrick Hammond is the closest that plaintiff comes to identifying a comparator. Patrick Hammond is the only other pharmacist that there was some awareness on the part of management of an allegation that there was a medication error, rather than just Abayomi's own personal view that his coworkers weren't doing a good job. And Patrick Hammond was on a probationary status at the time of the alleged error, so this is worthy of further consideration. So there was suspicion of medication errors that related to Patrick Hammond's work. There was then fact-finding conducted by the VA's Office of Medical Inspectors, and that's a group of clinicians that comes in and reviews the record. And this is important for the court to review. It appears at Docket 48-3, Exhibit 62. And the fact-finding resulted in conclusions about the way the pharmacy department operated as a whole, how it was orienting new pharmacists, how it was doing schedule changes. There were no findings related to Mr. Hammond's individual competence or judgment. So Hammond was never subject to a Weingarten investigation like Abayomi? Correct. If that report had revealed concerns about Mr. Hammond's individual competence and performance, not systemic issues and areas for improvement for the pharmacy department as a whole, then there would have been issues that would have given rise to a Weingarten investigation. He would have been confronted with what they viewed as his errors. Let me make sure I understand you. But you're not saying Stone was not, you concede Stone was aware of errors Hammond had made or reports of errors Hammond had made? That you're not disputing? That's correct, Your Honor, because Stone was aware of the findings of the VA's Office of Medical Inspector. And, again, there were no substantiated errors as a result of all that comprehensive fact-finding that would have served as a basis to discipline Mr. Hammond. And so why are we looking at all of this, Hammond's performance versus Abayomi's performance and the disparate fact-finding? The question is, would there be a reason to infer discrimination from the fact that one of these pharmacists was terminated and the other was not? Or is the different treatment something that flows naturally from the different circumstances? And in this case, it's the latter. There were suspicions of medication errors. The VA looked into what was the cause of those medication errors. With respect to Mr. Abayomi, it related to his individual competence and performance. And with respect to Mr. Hammond, it was found to relate to systemic issues that the pharmacy department and pharmacy management need to tackle on its own. And so there would have been no basis to terminate Mr. Hammond, and so it makes complete sense that he was not terminated. No reasonable jury could infer from that that Mr. Abayomi's termination was because of his race or protected activity. I wanted to address briefly Abayomi's reference to the cat's paw theory of liability. This is effectively a concession that the decision-makers involved here, Ms. Stone and Mr. Links, weren't acting with racial or discriminatory animus themselves. And indeed, there's no evidence that they were acting with racial or discriminatory animus. But because Mr. Abayomi believes he has evidence that Mr. Elliot harbored racial or retaliatory animus, and for purposes of this discussion, I'll concede that, because he claims he heard this boy's statement, for example. Through the cat's paw theory, Mr. Abayomi wants to show that Stone and Links were influenced by this bad actor, Mr. Elliot. But what he ignores here is that there's two elements to satisfy a cat's paw theory of Abayomi. One is the animus element, which again, for purposes of this discussion, we concede. But the second is a causation element. He has to show that Elliot, the bad actor, caused the termination. And a cat's paw theory is nullified in cases like this, where the decision-maker is acting in meaningful part on their own fact-finding, their own investigation, even when the bad actor puts the wheels in motion. So that's exactly what's happening here. Appellant alleges that Mr. Elliot, the bad actor, put the wheels in motion by requesting this wine garden investigation. But then the independent fact-finding of the decision-makers, principally Ms. Stone, was that these medication errors had occurred, and that Mr. Abayomi explained them by saying, essentially, look, I can meet my production requirements, or I can act carefully. I can't do both. And in that way, the cat's paw theory of liability is nullified, and the causation requirement is something that we direct the court's attention to, and appellant's inability to satisfy that. Just one thing quickly. We heard a moment ago this idea that some of the VA's witnesses were confronted in deposition and asked to explain what other black pharmacist has ever been terminated from this group. I just want to point out that this is a disparate treatment case, not a disparate impact case. And general statistical evidence, such as accounting for the number of racial minorities in a particular position or a particular group, is an improper vehicle to prove discriminatory intent. And that comes from this court's decision in Player V. E. J. Branch, 105 F. 3rd, 343. I see I'm out of time. You contend it's irrelevant or just insufficient? It's irrelevant to prove discriminatory intent on the part of the decision-makers. And even if it was relevant, the type of evidence that Mr. Abayomi has marshaled here, that he was the only black pharmacist, would fall far short of what the law requires in terms of statistical methodology that we see in disparate impact type cases. And this court recently explained that statistical methodologic requirements in Downing v. Abbott Labs, 48 F. 4th, 793. And there the court explained that it's not just enough to show that there isn't the type of representation plaintiffs would want to see in a given employment group. You have to look at the sampling, what the job market, what the type of applicants are, to see if that representation is meaningful or not. And if there are no further questions, we'd ask that this court affirm the decision below. Thank you, Ms. German. Mr. Ryan, anything else? A couple of things, Judge. One thing that the VA mentioned is that Mr. Abayomi has no evidence of similarly situated employees being treated more favorably because he's relying on his declaration. That's obviously not the case. We have the investigation into Mr. Hammond, and we also have testimony from his comparators who acknowledge that they made mistakes, such as Alex Chu, and acknowledge that they were counseled by their superiors, including Mr. Elliott. In addition, the cat's paw theory that the counsel brought up, I disagree that that wouldn't apply here. There is a question of fact as to whether this was truly an independent investigation taken in good faith. Judging from the timing of the initiation of the Weingarten hearing, a reasonable jury could find that Elizabeth Stone had a retaliatory motivation against Mr. Abayomi as well. And putting the cat's paw theory aside for a second, this case can also be established just on a traditional indirect method of proving discrimination. The client, Mr. Abayomi, met the performance expectations of the VA. He was terminated. Similarly situated employees were treated more favorably. He's in a protected class, and the explanation for the termination is pretextual. So even if the cat's paw theory were unsuccessful, there's another way to find favor of Mr. Abayomi. So unless you have any other further questions, I would ask that the court decision be reversed and remanded for trial. Thank you, Mr. Wright.  The case will be taken under advisement.